# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| FRANKLIN BARRETO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0290 |
| | § | |
| CONTINENTAL EXPRESS, INC., | § | |
| a/k/a CONTINENTAL EXPRESS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff Franklin Barreto sued his former employer, Continental Express, Inc. ("CEI"), in Texas state court, alleging discrimination on the basis of his disability under the Texas Commission on Human Rights Act, TEX. LABOR CODE § 21.001, *et seq.* CEI, a South Dakota corporation with its principal place of business in Arkansas, removed to this court on the basis of diversity jurisdiction. CEI has moved for summary judgment. (Docket Entry No. 13). Barreto has not responded.[1] After reviewing the motion, the record, and the applicable law, this court grants CEI's motion. The reasons for this decision are explained below.

---

[1] This court granted Barreto's counsel's motion to withdraw on May 10, 2006, and extended Barreto's deadline for filing a response to the motion for summary judgment to June 16, 2006. (Docket Entry No. 18). Barreto did not file a response by June 16, 2006.

## I.    Background

CEI is a truckload, truck/rail, and logistics transportation company.  As noted, it is incorporated in South Dakota and has its principal place of business in Little Rock, Arkansas. Barreto, a type II diabetic, first began working for CEI as a truck driver in September 1999. Barreto lives in Katy, Texas.  He initially reported to CEI's Dallas terminal.  When CEI hired Barreto, it required him to complete a Department of Transportation ("DOT")-mandated physical examination.  Because Barreto was diabetic, DOT regulations required regular follow-up examinations and certifications.

On July 28, 2003, Barreto was admitted to a Connecticut hospital after complaining of symptoms including dizziness, digestive problems, and hiccups.  Doctors at the hospital conducted various tests, concluded that Barreto had high blood sugar levels, and administered insulin.  On July 30, 2003, the hospital released him and he drove back to Arkansas.  Before he left, Barreto authorized the hospital to send CEI his medical records. CEI reviewed the records and determined that Barreto had disqualifyingly high blood sugar levels and had to be recertified under the DOT guidelines.

CEI sent Barreto to its company doctor for the recertification.  Barreto failed to meet the physical requirements on three occasions because of his high blood sugar.  On August 6, 2003, Barreto asked for a leave of absence so that he could return to Texas and recover fully from his hospital stay.  Barreto ultimately signed a request for a leave of absence effective August 4, 2003.  He received a Family and Medical Leave Act (FMLA) request

form, which he took with him.  CEI arranged for Barreto to be driven back to Texas by another CEI driver.

Barreto returned to Houston and was admitted to the hospital.  Barreto remained in the hospital for two to three weeks.  Barreto's Houston-based doctors determined that Barreto had suffered a stroke the previous month in Connecticut.  Sometime in mid-September 2003, Barreto returned the FMLA request form to CEI, citing "stroke" as the reason for his requested FMLA leave.  CEI approved Barreto's request effective August 4, 2003, the first day of his leave of absence.  Barreto also sent CEI several return-to-work releases signed by his Houston physicians.  CEI explained to Barreto that he would also need to be recertified by a DOT-approved physician before he could return to work.  Barreto failed to provide CEI a completed DOT Medical-Examination Report or a Medical Examiner's Certificate.  Without this certification, Barreto could not meet the regulatory requirements to drive commercial vehicles.

On October 27, 2003, Barreto's FMLA leave expired.  CEI terminated Barreto's employment because he had not obtained a valid certification and because guidelines published by the National Technical Information Service ("NTIS"), a division of the United States Department of Commerce, advised that drivers should not resume commercial driving within the first year after a stroke.  CEI provided Barreto with a copy of these guidelines.  CEI also informed Barreto that he would be eligible for rehire in one year, assuming that he could pass the physical examination at that time.  Since his termination, Barreto has never applied for rehire or for any other position with CEI.

At his deposition, Barreto testified that notwithstanding his stroke and diabetic condition, he believed that he is mentally and physically capable of performing any job except jobs in the electronics field.  (Docket Entry No. 13, Ex. B at 67).  Barreto testified that the only permanent result of the stroke was a loss of his electronics knowledge.  Barreto also stated that no CEI employee ever told him that they believed he was disabled.  (*Id.*).

Barreto currently works as a truck driver for Crete Trucking.  He has held this job since the spring of 2004.  On the medical history section of the DOT Medical Examination Report Barreto completed when he applied for the job, Barreto checked, "No" in the place on the form asking whether he had a history of stroke.

## II.      The Legal Standards

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary

judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 305 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.,* 333 F.3d 566, 568 (5th Cir. 2003).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255. "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

The TCHRA prohibits discrimination by private employers against any qualified individual with a disability.  TEX. LABOR CODE ANN. § 21.051(1).  The TCHRA is similar to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and Texas courts look to cases interpreting the ADA to decide cases brought under the TCHRA.  *Rodriguez v. Conagra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).  The ADA makes it unlawful for an employer to discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).  "The term 'disability' means, with respect to an individual — (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(2)(A)–(C).  Finally, even if an employer discriminates against a "qualified individual with a disability," that employer can avoid liability by asserting a legitimate justification for its action, including that the plaintiff,

if hired, would "pose a direct threat to the health or safety of other individuals in the workplace." *Id.* § 12113(b).

In discrimination cases in which the plaintiff introduces only circumstantial evidence, the plaintiff's *prima facie* case in a TCHRA/ADA case requires evidence showing: (1) at the time of the employment action, he had a "disability" as defined by the statute; (2) he was qualified for the position for which he sought employment or continued employment; (3) he suffered an adverse employment action because of his disability status; and (4) he was replaced by or treated less favorably than non-disabled employees. *Rodriguez*, 436 F.3d at 474; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003).

## III.    Analysis

Barreto neither pleaded nor testified that he is actually disabled.  Barreto alleges only that CEI regarded him as disabled.  An individual is "regarded as" disabled if the employer mistakenly believes that: the individual has a physical impairment that substantially limits one or more major life activities; the individual has an actual nonlimiting impairment that the employer believes substantially limits one or more major life activities. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489 (1999).  In both situations, the employer must have misperceptions about the plaintiff—it must believe either that the plaintiff has a substantially limiting impairment that he does not have, or believe that the plaintiff has a substantially limiting impairment when, in fact, the impairment is not so limiting. *Id.*

Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(1) (1998).

"Substantially limits" is defined as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *Id.* § 1630(j)(3)(i). The Supreme Court has held that "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Murphy v. United Parcel Serv.*, 527 U.S. 516, 523 (1999) (citing 29 C.F.R. § 1630(j)(3)(i)). The Court stated that the plaintiff must at least make a showing that he is "unable to perform a class of jobs." *Id.* at 525. The EEOC defines "significantly restricted in the major life activity of working" as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630(j)(3)(i). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*

Barreto alleges that CEI regarded him as being substantially limited in the major life activity of working. The record does not support this claim. CEI explained to Barreto that he was being fired because he did not obtain the government-mandated medical certification to drive a commercial vehicle. CEI explained to Barreto that he could reapply for his position a year after his stroke and after he had obtained the requisite certification.

Barreto testified that he is able to perform a wide variety of tasks. (Docket Entry No. 13, Ex. B at 67). Barreto has failed to introduce any evidence tending to show that CEI believed otherwise. The very terms of Barreto's job termination notice bolster CEI's position: Barreto's failure to receive a valid medical certification was the reason he was fired.

8

CEI told Barreto that he could not work only his current job because it required a DOT-approved medical clearance that he did not obtain.  As in the *Murphy* case, in which another employee who failed to secure a DOT-approved medical clearance for his commercial driver's license lost his job and sued his employer, Barreto has shown, at most, that he was unable to hold a job requiring a DOT-approved commercial driver's license.  527 U.S. at 522; *see also Bridges v. City of Bossier*, 92 F.3d 329, 335 (5th Cir. 1996) (holding that the job of "firefighting," meaning those holding the job of firefighter, municipal paramedic, and EMT—is not a "class of jobs" as required for proof of perceived substantial limitation in the major life activity of working).  This is insufficient to meet his burden.  *See Mason v. United Airlines, Inc.*, 274 F.3d 314, 317 (5th Cir. 2001) (rejecting a "regarded as" challenge by an employee and concluding that the plaintiff presented "no evidence that [he] was not qualified for a broad range of other jobs that did not require the manipulation of weighty objects, or that United incorrectly made broad generalizations regarding his impairments").  Because Barreto has failed to create a fact issue as to whether CEI perceived him as being disabled, CEI's motion for summary judgment is granted.

CEI is also entitled to judgment as a matter of law because as a matter of law,  Barreto was not "qualified" for his commercial driver position at the time CEI fired him.  A "qualified individual with a disability" is a disabled person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  DOT regulations require commercial truck drivers to pass a DOT physical and to hold a valid DOT Medical Examiner's

9

Certificate.  *See* 49 C.F.R. § 391.41.  Passage of the DOT-required physical examination and possession of a valid Medical Examiner's Certificate are essential job requirements for commercial truck drivers.  (Docket Entry No. 13, Ex. A, ¶ 5).  At his deposition, Barreto testified that he intended to return to work from his FMLA leave of absence on September 10, 2003.  (Docket Entry No. 13, Ex. B at 39).  Barreto testified that he knew he had to obtain DOT recertification before he could return to work.  (*Id.*).  When asked explicitly if he ever passed a DOT physical and furnished a valid recertification to CEI after September 10, 2003, Barreto said, "No."  (*Id.* at 46).  Without a valid certification, Barreto was not qualified for the job of commercial truck driver at the time CEI terminated his employment.[2]  For this independent reason, summary judgment in CEI's favor is appropriate.  *Accord Mink v. Wal-Mart Stores, Inc.*, 185 F. Supp. 2d 659, 664 (N.D. Miss. 2002) (awarding summary judgment to the defendant because the ADA plaintiff failed to meet the commercial driving medical certification requirements).

## IV.    Conclusion

CEI's motion for summary judgment is granted.  Final judgment in CEI's favor will be entered by separate order.

SIGNED on June 20, 2006, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[2]  The fact that Barreto later obtained employment with another truck driving company does not help his case because Barreto was unable to pass the DOT physical requirements at the relevant time period in this lawsuit.  The fact that Barreto later became qualified for the CEI job is irrelevant.